JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Regina Shaw
521 Summerhill Lane
Harleysville PA 19738

(b) County of Residence of First Listed Plaintiff: **Montgomery**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Nancy C. DeMis, Esquire, Schoenfeld, Sukin, Chupein & DeMis P.C
25 W. 2nd Street P.O. Box 900, Media PA 19063
610-565-4600

## DEFENDANTS
Stryker, Inc.
77 Great Valley Parkway
Malvern PA 19355

County of Residence of First Listed Defendant: **Chester County**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC sec. 2000e et seq.
Brief description of cause:
gender-based discrimination and harassment, and retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 02/17/2015
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __521 Summerhill Lane, Harlesville PA 19738__

Address of Defendant: __77 Great Valley Parkway, Malvern PA 19355__

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒

RELATED CASE, IF ANY:
Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, __Nancy C. DeMis, Esquire__, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __February 17, 2015__   __Nancy C. DeMis, Esq__    __58897__
                                Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __February 17, 2015__   __[signature] Nancy C. DeMis__    __58897__
                                Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Regina Shaw | : | CIVIL ACTION |
| v. | : |  |
| Stryker, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (xx)

| February 18, 2015 | Nancy C. DeMis, Esquire | Regina Shaw |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-565-4600 | 610-566-8257 | Ndemis@sscd-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Regina Shaw  :
521 Summerhill Lane  :
Harleysville, PA 19738  :
      Plaintiff,  :
                                   :     CIVIL ACTION NO:
   v.  :

Stryker, Inc.  :
77 Great Valley Parkway  :
Malvern, PA  :
      Defendant.  :     **Jury Trial Demanded**
                                   :

## COMPLAINT
### Jurisdiction and Venue

1.     Plaintiff bring these claims under Title VII of the 1964 Civil Rights Act (42 U.S.C.A. Sec. 2000(e) *et seq.*) the Pennsylvania Human Relations Act, 43 P. S. Ann. Section 951 et seq.. Venue is proper in this district as defendants can be found in this district and the events giving rise to the claims occurred in this district.

2.     Regina Shaw ("Shaw") is a female citizen of Pennsylvania who resides at 521 Summerhill Lane, Harleysville, Montgomery County, Pennsylvania 19738.

3.     Defendant Stryker, Inc., ("Stryker") is a Michigan corporation having a registered address for service with the Pennsylvania Corporations Bureau at C T Corporation System, 116 Pine Street, Suite 320, Harrisburg PA 17101 and a principle place of business at 77 Great Valley Parkway, Malvern , Chester County, PA 19355. On information and belief Stryker is also known as Stryker Orthobiologics.

**PROTECTION FROM DISCRIMINATION AND RETALIATION**

4. Plaintiff Shaw is protected from gender-based discrimination and harassment, and from retaliation for opposing unlawful discrimination and harassment, by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* and the PHRA, 43 P. S. Ann. § 951 et seq.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. Shaw timely filed a charge alleging sexual harassment and retaliation for complaining of unlawful harassment with the EEOC, on or around March 21, 2014, Charge Number 530-2014-022502.

6. On or around November 24, 2014, the EEOC issued a Notice of Right to Sue, which date is fewer than 90 days prior to initiating this litigation.

**FACTS**

7. Shaw was employed as a technician working in the Malvern facility of Stryker from July 15, 2013 until on or about January 10, 2014. Her job title while working at Stryker was Manufacturing Representative.

8. Shaw was placed at the Malvern facility thru a placement agency known as Comrise, Inc. ("Comrise"). Comrise is not registered with the Pennsylvania Corporations Bureau to do business in Pennsylvania, but Stryker regularly engages it as a joint employer to place employees at Stryker's Pennsylvania facility, where their wages are paid through Comrise's payroll.

9. Shaw's employment was controlled in all relevant aspects by Stryker. Stryker controlled the hours and day to day activities of Shaw, supervised all employment activities, and employed her colleagues at work, but paid Shaw for her work through Comrise.

10. Stryker regularly hires Comrise employees who are placed at Stryker, who are said by Stryker and Comrise to be on a "temp to permanent" placement. Shaw was such an employee.

11. Shaw did her job well. In or around August 2013, Shaw met with the director of the Malvern facility, Marta Vukasovic, for a review, which led to a discussion of Shaw's permanent employment with Stryker. Vukasovik said Shaw was doing an excellent job. Vukasovik advised Shaw that permanent positions would be offered by Stryker in order of seniority to temporary employees. She said Shaw was "next in line" to become a permanent employee, and asked her to be patient.

12. Shaw was pleased to find employment locally, because she helps care for a grandchild with special needs. Based upon the assurances she received from Vukasovik, that she would be a permanent employee shortly, Ms. Shaw and her husband moved closer to the Malvern facility.

13. While she was working for Stryker, Shaw became the target of hostile and abusive ridicule by several male employees of Stryker, including Ryan Neary ("Neary"), a manufacturer's representative at Stryker. These employees made fun of her and other female employees, had loud discussions about which female employees they would have sex with, and bemoaned the lack of "hot" women at the facility.

14. In or around late September or early October, 2013, Shaw was properly in the break room with other employees. An employee shouted across the break room to Shaw, asking if she had been shopping in Walmart the previous weekend. They said that she had been seen there. At this point everyone in the break room was listening, and some had started laughing.

3

if she had been shopping in Walmart the previous weekend. They said that she had been seen there. At this point everyone in the break room was listening, and some had started laughing.

15. Neary then showed Shaw a photo on his cell phone. The picture was of a very obese woman wearing a revealing purple satin dress or nightgown with spaghetti straps, onto which a picture of Shaw face had been photo-shopped.

16. Shaw was shocked, humiliated, and deeply offended. She told the men that she was very self-conscious. Neary and other male associates in the break room continued to laugh.

17. Shaw left the break room crying and was obviously upset when she encountered some of her female coworkers. They saw how upset she was and asked what had happened. Shaw briefly described the humiliating scene. Shaw's coworkers told Shaw that Neary had a history of harassing female workers and encouraged her to report his conduct.

18. Shaw reported the incident to her immediate supervisor, Eric Laflan. She told Laflan that she did not want anyone fired, but she wanted employees to understand that this sort of conduct was unacceptable. Laughlin reassured Shaw that she had done the right thing to report Neary's conduct and that management would take the report seriously. He instructed Shaw to stay away from Neary and said he would "take care of it."

19. Approximately two weeks later, Neary pursued Shaw throughout the facility. He first telephoned Shaw in the warehouse, demanding that she come speak to him in another building. Shaw refused and told Neary to leave her alone. Neary replied that he would come to Shaw's work location to speak to her.

20. Shaw did not know what to do, as she had been instructed to stay away from Neary, so she looked for a supervisor. When she could not find a supervisor, she went to the lead technician, Mike Filben, who was a group leader and the "next in command" under to

4

to speak to him. Shaw was trying to follow her supervisor's injunction to "stay away" from Neary.

21. Neary came into the building. Filbin, who was sitting near the entrance, told Neary to stay away from Shaw and told him to leave Shaw alone. Neary instead went into the room where Shaw was seated, working with an engineer, Michael O'Hara. Neary demanded that Shaw speak to him alone. By this time, Shaw was crying, having been told that she was to avoid Neary.

22. In an effort to diffuse the situation, Shaw went into the hall to speak with Neary. O'Hara left the door open, having been told by Shaw that she was concerned about interacting with Neary. Neary grudgingly apologized – weeks after the event - and then angrily demanded why Shaw had reported his conduct, saying he was going to lose his job. Shaw said it was out of her hands.

23. A few days later, Vukasovic told Shaw that Tara Derivan, a Stryker Human Resources employee, wanted to speak with her about Neary. Vukasovic reassured Shaw that she had done the right thing to report Neary's conduct, and said that Neary "has a history." Both Derivan and Vukasovic said that everyone involved would be interviewed.

24. As requested, Shaw met with Stryker HR representative Derivan in Malvern. Shaw described the incident in the break room.

25. Derivan was dismissive of Shaw's complaint. She asked Shaw why she had not simply confronted Neary herself, why she had involved "a lot of people" and "bothered HR." Shaw protested that Neary had involved other people and she had only spoken to her supervisor about the incident, which took place in a crowded room.

26. A reasonable woman in Shaw's position would find Neary's conduct above described offensive and hostile. Shaw did in fact experience Neary's conduct as offensive and hostile.

27. Neary's employment was thereafter terminated.

28. On information and belief, this was not the first time Stryker had received reports of unlawful gender-based harassment by Neary, but Stryker had failed to take adequate steps to assure that his discriminatory conduct ceased.

29. Shaw continued to do an excellent job. She was part of a team which was commended for excellence in their performance. She received a seven hundred and fifty dollar bonus for her contribution to that excellent work.

30. Despite excellent performance, Shaw was not hired as a permanent employee.

31. By contrast, other temporary employees, with less experience and less tenure, were made permanent during this same period, and Stryker was advertising for full time employees for direct hire.

32. On or about January 10, 2014, Shaw was advised by a Comrise representative that Stryker said there was no more work for Shaw at Stryker. Shaw was told this on the same day that her team was given an award for successful performance. On information and belief, Stryker continued to use other Comrise workers, including workers with less experience, fewer skills, and lower abilities, and Stryker hired the Comrise temp who was next in seniority, Christopher Brown.

33. Comrise advised Shaw that they had no other placement opportunities for Shaw, outside of the Stryker opportunity.

34. When she found out that Brown was being hired, Shaw asked Laflin why she had not been offered a permanent position. Laflin said it was because of the Neary situation. He said that Shaw should not have discussed the situation with others, that she had brought "too many people into the situation" and should have kept it to herself. He also said that she was not interested in other aspects of the business, when in fact he had given her a tour of the other activities at the facility at her request.

35. Shaw had *not* brought others into the situation. She had properly reported the events to Laflin, who had apparently told the Facility Director. Neary made others aware of the situation by hounding her throughout the facility after being told to leave Shaw alone.

36. On information and belief, Stryker thereafter hired both permanent and temporary employees with similar or less qualification than Shaw.

37. Shaw was denied the opportunity to continue her placement at Stryker and denied the opportunity for a permanent position with Stryker in retaliation for reporting Neary's misconduct.

38. As a permanent, full-time employee of Stryker, Shaw would have been eligible to accrue vacation and sick time and would have received retirement benefits, disability benefits, stock options, health insurance, and similar benefits. She would have opportunities for promotion and job growth.

39. As a result of the acts above-alleged, Shaw has suffered emotional distress including sleeplessness, anxiety, and humiliation.

40. As a result of the acts above-alleged, Shaw has suffered financial harm including lost wages, lost benefits, and lost employment opportunities.

## COUNT I
## VIOLATION OF TITLE VII
### (Hostile Work Environment - Gender)

41. Plaintiff incorporates herein by this reference the allegations contained in the preceding paragraphs of this Complaint.

42. Defendants Stryker, Inc. was on notice of a hostile work environment at the Malvern facility, tainted by unlawful gender discrimination, harassment, and bias, and failed to take reasonable steps to put a halt to such unlawful activity.

**Wherefore,** Plaintiff prays for the following relief:

a) Judgment in favor of Plaintiff and against Defendant Stryker, Inc for compensatory damages under Title VII according to proof;

b) Order Defendant to compensate Plaintiff for the full economic value of compensation and benefits she would have received had her rights not been violated, with interest thereon;

c) Order Defendant to offer full time employment to Plaintiff;

d) Enter a permanent injunction enjoining defendant from continuing to retaliate in violation of Title VII;

e) Order Defendant to pay Plaintiff the costs and expenses of this litigation, including reasonable attorney's fees; and

f) Grant such further legal and equitable relief, as the Court may deem just and proper.

## COUNT II
## VIOLATION OF TITLE VII
### (Retaliation for Good Faith Report of Gender Discrimination)

43. Plaintiff incorporates herein by this reference the allegations contained in the preceding paragraphs of this Complaint.

44. Plaintiff reasonably and in good faith believed she was the victim of gender-based harassment and discrimination, which she properly reported to her immediate supervisor.

45. Stryker's termination of Plaintiff's temporary placement, and failure to make Plaintiff's employment permanent, was motivated in whole or in part by retaliatory animus for her reporting gender-based discrimination in the workplace.

**Wherefore,** Plaintiff prays for the following relief:

a) Judgment in favor of Plaintiff and against Defendant Stryker, Inc for compensatory damages under Title VII according to proof;

b) Order Defendant to compensate Plaintiff for the full economic value of compensation and benefits she would have received had her rights not been violated, with interest thereon;

c) Order Defendant to offer full time employment to Plaintiff;

d) Enter a permanent injunction enjoining defendant from continuing to retaliate in violation of Title VII;

e) Order Defendant to pay Plaintiff the costs and expenses of this litigation, including reasonable attorney's fees; and

f) Grant such further legal and equitable relief, as the Court may deem just and proper.

## COUNT III
### VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT
**(Retaliation for Good Faith Report of Gender Discrimination)**

46. Plaintiff incorporates herein by this reference the allegations contained in the preceding paragraphs of this Complaint.

47. Defendant's retaliatory conduct described above is a violation of the Pennsylvania Human Relations Act, 43 Pa. C. S. A. § 951.

**Wherefore,** Plaintiff prays for the following relief:

a) Judgment in favor of Plaintiff and against Defendant for compensatory damages under the PHRA according to proof;

b) Order Defendant to compensate Plaintiff for the full economic value of compensation and benefits she would have received had her rights not been violated, with interest thereon;

c) Order Defendant to reinstate Plaintiff's employment;

d) Enter a permanent injunction enjoining Defendant from continuing to discriminate in violation of the PHRA;

e) Order Defendant to pay Plaintiff the costs and expenses of this litigation, including reasonable attorney's fees; and

f) Grant such further legal and equitable relief as the Court may deem just and proper.

## COUNT III
### VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT
**(Gender Discrimination)**

48. Plaintiff incorporates herein by this reference the allegations contained in the preceding paragraphs of this Complaint.

49. Defendant's discriminatory conduct described above is a violation of the Pennsylvania Human Relations Act, 43 Pa. C. S. A. § 951.

**Wherefore,** Plaintiff prays for the following relief:

a) Judgment in favor of Plaintiff and against Defendant for compensatory damages under the PHRA according to proof;

b) Order Defendant to compensate Plaintiff for the full economic value of compensation and benefits she would have received had her rights not been violated, with interest thereon;

c) Order Defendant to reinstate Plaintiff's employment;

d) Enter a permanent injunction enjoining Defendant from continuing to discriminate in violation of the PHRA;

e) Order Defendant to pay Plaintiff the costs and expenses of this litigation, including reasonable attorney's fees; and

f) Grant such further legal and equitable relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

50. Plaintiff demands trial by jury on all counts complained of herein for which such relief is available.

Date: 2/18/2015

NANCY C. DeMIS (#58897)
SCHOENFELD, SURKIN,
    CHUPEIN & DeMIS, PC
25 West Second Street
Media, PA 19063
Telephone: (610) 565-4600
*Attorney for Plaintiff Regina Shaw*

11